# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### WESTERN DIVISION

CANDI OLSON,

          Plaintiff,

vs.

ANDREW M. SAUL, Commissioner of
Social Security,[1]

          Defendant.

No.  C18-4053-LTS

**MEMORANDUM OPINION AND
ORDER ON REPORT AND
RECOMMENDATION**

---

## I.    INTRODUCTION

This case is before me on a Report and Recommendation (R&R) filed by the Honorable Mark A. Roberts, United States Magistrate Judge.  *See* Doc. No. 16.  Judge Roberts recommends that I affirm the decision by the Commissioner of Social Security (the Commissioner) denying Candi Olson's application for disability insurance benefits under Title II of the Social Security Act (the Act), 42 U.S.C. §§ 401-34.  Olson filed timely objections (Doc. No. 17).  The background is set forth in the R&R and is repeated herein only to the extent necessary.

## II.    APPLICABLE STANDARDS

### A.    *Judicial Review of the Commissioner's Decision*

The Commissioner's decision must be affirmed "if it is supported by substantial evidence on the record as a whole."  *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir.

---

[1] Andrew M. Saul was sworn in as Commissioner of Social Security on June 17, 2019.  Pursuant to Federal Rule of Civil Procedure 25(d), he has been substituted for Acting Commissioner Nancy A. Berryhill as the defendant in this suit.

2006); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . ."). "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion." *Lewis v. Barnhart*, 353 F.3d 642, 645 (8th Cir. 2003). The Eighth Circuit explains the standard as "something less than the weight of the evidence and [that] allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal." *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994).

In determining whether the Commissioner's decision meets this standard, the court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005). The court considers both evidence that supports the Commissioner's decision and evidence that detracts from it. *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010). The court must "search the record for evidence contradicting the [Commissioner's] decision and give that evidence appropriate weight when determining whether the overall evidence in support is substantial." *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003) (citing *Cline v. Sullivan*, 939 F.2d 560, 564 (8th Cir. 1991)).

In evaluating the evidence in an appeal of a denial of benefits, the court must apply a balancing test to assess any contradictory evidence. *Sobania v. Sec'y of Health & Human Servs.*, 879 F.2d 441, 444 (8th Cir. 1989). The court, however, does not "reweigh the evidence presented to the ALJ," *Baldwin*, 349 F.3d at 555 (citing *Bates v. Chater*, 54 F.3d 529, 532 (8th Cir. 1995)), or "review the factual record de novo." *Roe v. Chater*, 92 F.3d 672, 675 (8th Cir. 1996) (citing *Naber v. Shalala*, 22 F.3d 186, 188 (8th Cir. 1994)). Instead, if, after reviewing the evidence, the court finds it "possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the court] must affirm the [Commissioner's] denial of benefits." *Kluesner*, 607 F.3d at 536 (quoting *Finch v. Astrue*, 547 F.3d 933, 935 (8th

Cir. 2008)). This is true even in cases where the court "might have weighed the evidence differently." *Culbertson*, 30 F.3d at 939 (quoting *Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir. 1992)). The court may not reverse the Commissioner's decision "merely because substantial evidence would have supported an opposite decision." *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984); *see Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005) ("[A]n administrative decision is not subject to reversal simply because some evidence may support the opposite conclusion.").

**B.     *Review of Report and Recommendation***

A district judge must review a magistrate judge's R&R under the following standards:

> Within fourteen days after being served with a copy, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b). Thus, when a party objects to any portion of an R&R, the district judge must undertake a de novo review of that portion.

Any portions of an R&R to which no objections have been made must be reviewed under at least a "clearly erroneous" standard. *See, e.g.*, *Grinder v. Gammon*, 73 F.3d 793, 795 (8th Cir. 1996) (noting that when no objections are filed "[the district court judge] would only have to review the findings of the magistrate judge for clear error"). As the Supreme Court has explained, "[a] finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer City*, 470 U.S. 564, 573-74 (1985) (quoting *United States v. U.S. Gypsum Co.*,

333 U.S. 364, 395 (1948)). However, a district judge may elect to review an R&R under a more-exacting standard even if no objections are filed:

> Any party that desires plenary consideration by the Article III judge of any issue need only ask. Moreover, while the statute does not require the judge to review an issue *de novo* if no objections are filed, it does not preclude further review by the district judge, sua sponte or at the request of a party, under a *de novo* or any other standard.

*Thomas v. Arn*, 474 U.S. 140, 150 (1985).

### III.    THE R&R

Olson applied for disability insurance benefits on February 11, 2015, alleging disability beginning July 1, 2012, due to fibromyalgia, chronic back and joint pain, arthritis, degenerative disc disease, depression and anxiety. Doc. No. 16 at 2 (citing AR 162, 198). After a hearing, an Administrative Law Judge (ALJ) applied the familiar five-step evaluation and found that Olson was not disabled as defined in the Act. Olson argues the ALJ erred by: (1) improperly evaluating the opinion of her treating physician, Dr. Kahl; (2) improperly evaluating her subjective complaints and failing to give her the opportunity to present her best disability case and (3) relying on a defective hypothetical. *Id.* at 7-8 (citing Doc. No. 12 at 1). Judge Roberts addressed each argument separately.

Judge Roberts first addressed Dr. Kahl's opinion as well as other medical opinions in the record. Dr. Kahl began treating Olson on March 24, 2015, and wrote her opinion on May 28, 2015. Doc. No. 16 at 8. Dr. Kahl stated Olson was incapable of performing either full-time or part-time work. *Id.* (citing AR 590). She concluded Olson could stand and walk two hours during an eight-hour workday and sit four hours during an eight-hour workday. *Id.* (citing AR 593). She also found that Olson was limited to lifting and carrying 10 pounds or less occasionally. *Id.* (citing AR 591). Dr. Kahl noted Olson's

orthopedist restricted Olson's lifting to 15 pounds.[2]  *Id.*  Olson could occasionally twist, climb, kneel, crouch, reach, pull, push, firmly grasp with both hands, finely grasp with both hands, work overhead, use static neck flexion, frequently rotate her neck and walk up an incline.  *Id.* (citing AR 592).  She could never bend, stoop or crawl.  *Id.*  Dr. Kahl estimated Olson would need four 15 to 20-minute unscheduled breaks during the workday in addition to standard breaks and lunch.  *Id.* at 9 (citing AR 591).  Finally, she concluded Olson's impairments would cause her to be absent from work four or more times per month.  The ALJ gave her opinion little weight.  *Id.*

Judge Roberts next considered the opinions of the state agency medical consultants, Dr. Cromer and Dr. Hunter.  On June 9, 2015, Dr. Cromer opined that Olson could occasionally lift and/or carry 10 pounds; frequently lift and/or carry 10 pounds; stand and/or walk two hours in an eight-hour day; sit six hours in an eight-hour day; occasionally balance, stoop, kneel, crouch and climb ramps and stairs; frequently handle and finger; do unlimited pushing and/or pulling with a 10-pound limit; do unlimited reaching; never climb ladders, ropes or scaffolds, or crawl; and should avoid concentrated exposure to extreme cold and vibration.  *Id.* (citing AR 60-61).  Dr. Hunter affirmed this opinion on July 30, 2015.  *Id.* (citing AR 77).  The ALJ assigned these opinions great weight, finding they were consistent with the medical evidence of record.  *Id.* (citing AR 21).

The record also contained opinions from a consultative examiner, Dr. Keizer, and a state agency psychological consultant, Dr. Ryan, concerning Olson's mental impairments.  After examining Olson, Dr. Keizer issued her opinion on May 15, 2015, finding Olson would experience some limitations in her ability to maintain attention, concentration and mental pace for an eight-hour day and this would likely fluctuate given

---

[2] Judge Roberts noted the form completed by Dr. Kahl did not allow her to select 15 pounds because the lifting and carrying limits were presented in 10-pound increments.  Doc. No. 16 at 8, n.4 (citing AR 591).

her level of pain, use of medications and "amount of restorative sleep." *Id.* at 10 (citing AR 587). She found Olson would have mild limitations in her ability to respond appropriately to changes in the workplace, but that her ability to interact in the workplace was appropriate. *Id.* The ALJ gave Dr. Keizer's opinion great weight, stating "the expert is a specialist who is familiar with social security policy and regulations, she personally examined the claimant, and provided an explanation with references [to] her examination findings to support her opinion." *Id.* (citing AR 21).

The ALJ gave Dr. Ryan's March 20, 2014, opinion substantial weight. Dr. Ryan opined Olson had mild restrictions in activities of daily living; no difficulties in maintaining social functioning; and moderate difficulties in maintaining concentration, persistence, or pace. *Id.* (citing AR 62-64). She found Olson could carry out instructions consisting of three to four steps and perform work tasks consistent with that ability. *Id.* (citing AR 64). Dr. Tashner, another state agency psychological consultant affirmed Dr. Ryan's opinion on July 31, 2015. *Id.* (citing AR 79). The ALJ disagreed that Olson had only mild limits in her ability to maintain concentration, persistence and pace, but otherwise found the opinions were "well supported with specific references to medical evidence, [were] . . . internally consistent as well as consistent with the evidence as a whole, [and because there was] no objective evidence contradicting" their opinions. *Id.* (citing AR 21).

After reviewing the regulations and case law related to medical opinion evidence, Judge Roberts considered Olson's arguments related to Dr. Kahl's opinion. *Id.* at 11-12. Olson argues Dr. Kahl's opinion was consistent with other treatment notes in the record documenting her various diagnoses and treatment. *Id.* at 12 (citing Doc. No. 12 at 4-5). Judge Roberts noted that because the ALJ did not give Dr. Kahl's opinion controlling weight, she was required to consider the following factors in determining its weight: (1) length of the treatment relationship and frequency of examination, (2) nature and extent of the treatment relationship, (3) supportability, (4) consistency, (5) specialization and

(6) other factors. *Id.* (citing 20 C.F.R. § 404.1527(c)(2)). As such, he considered the ALJ's analysis of Dr. Kahl's opinion in light of these factors.

As for the length and frequency of the treatment, Judge Roberts noted the ALJ cited the short treatment relationship (less than two months) as one of the reasons for giving her opinion less weight. *Id.* at 13 (citing AR 22). Within that time frame, Dr. Kahl saw Olson only on two occasions for "recheck of chronic lumbar back pain," "recheck of obesity," and "recheck of anxiety," as well as a general physical. *Id.* (citing AR 603-07). Judge Roberts considered Olson's argument that she was a long-time patient of the Family Medicine Clinic where Dr. Kahl practices, but he noted Olson cited no precedent in support of this argument and the record lacked any references to other Family Medicine Clinic records or findings by any of Dr. Kahl's colleagues at the clinic. Judge Roberts concluded this factor supported the ALJ's decision of giving Dr. Kahl's opinion little weight. *Id.* at 13-14.

Next, Judge Roberts examined the nature and extent of the treatment relationship. *Id.* at 14. He noted that Dr. Kahl prescribed and refilled Olson's medications and that Olson's visits typically consisted of Olson describing her symptoms and a discussion of whether her medications were providing sufficient relief. *Id.* (citing AR 597, 600-07). It appeared from the record that Dr. Kahl performed one physical examination of Olson before writing her opinion. *Id.* (citing AR 604-05). Olson reported no joint or muscle pain or weakness. Objective testing and observations of her lumbar spine and lower extremities were all normal except for some pain and tightness in her paraspinal muscle. *Id.* Olson was also stable on her then-current anxiety medications. *Id.* She noted Olson's degenerative lumbar disc caused her chronic pain resulting in "chronic narcotic use x years, impairs ability to work [secondary] to difficulty standing and pain meds interfere with concentration, no work x 3 years now. Disability forms completed please see attached." *Id.* Dr. Kahl stated that she relied on a previous MRI and the lifting restriction from Olson's orthopedist in reaching her conclusions. *Id.* Judge Roberts noted "[t]o the extent Dr. Kahl's treatment notes support the limits she puts on Claimant's ability to

work, those limits appear to be the result of Claimant's self-reports, and not any clinical assessments." *Id.* He pointed out that the ALJ determined Olson's subjective complaints were not credible and that this factor weighed in favor of affording Dr. Kahl's opinion little weight.

As to supportability, Judge Roberts noted that Dr. Kahl's opinion consisted of a check box form. *Id.* at 16. She provided no reasons or support for the limitations identified in her opinion, but simply checked boxes for all limitations, including that working would cause an "extreme" increase in the severity of Olson's symptoms. *Id.* at 17. Judge Roberts noted that it also did not appear from Dr. Kahl's records that she had ever tested Olson's lifting capabilities. *Id.* The ALJ gave Dr. Kahl's opinion little weight based, in part, on the fact that her opinion appeared "to be the product of pre-printed questionnaires, submitted to Dr. Kahl by the claimant's attorney, that includes a number of leading questions and similar inducements which are not designed for objective responses, but rather for verification of legal conclusions about the claimant's alleged impairments." *Id.* at 18 (quoting AR 22). The ALJ also noted that while the form provides for both negative and positive "check-off responses," the form "appears to be intended to further the claimant's litigation interests rather than provide an objective medical evaluation of the functional limitations because the opinions related to functional limitations are not supported with objective medical findings and are inconsistent with the substantial evidence of record." *Id.*

To the extent the ALJ found the checklist form was biased in Olson's favor, Judge Roberts disagreed. He noted it demonstrated an effort to be complete and obtain information about many relevant issues that may reflect on a claimant's health and ability to work. Nonetheless, he noted that as a form, it suffers from many of the deficiencies the Eighth Circuit cautions against – no room for narrative or opinion, the result of a series of conclusory statements, checked blanks "circled answers, and brief fill-in-the-blank responses." *Id.* (quoting *Thomas v. Berryhill*, 881 F.3d 672, 675 (8th Cir. 2018)). The only narrative Dr. Kahl provided was that her opinions related to Olson's "fair to

poor ability" to understand and carry out any type of job instructions is "secondary to [her] anxiety and [due to] pain medication side effects." *Id.* (quoting AR 594). She also stated that her opinions related to Olson's abilities to function in the workplace would be fair to poor because of anxiety and medication side effects. *Id.* (citing AR 594-95).

Judge Roberts found these two narrative pieces did not help bolster Dr. Kahl's opinion. Her treatment notes indicate that medication side effects and how anxiety affects Olson come from Olson's self-reports. *Id.* at 19 (citing AR 603, 605). Dr. Kahl did not document these side effects anywhere else in her treatment notes. Dr. Kahl's treatment notes also did not contain any mental health assessments or tests. Dr. Kahl's treatment notes even state that Olson's anxiety does *not* cause Olson difficulty concentrating. *Id.* Judge Roberts also noted that the sitting and standing limitations also appeared to stem from Olson's self-reports because there were no assessments in Dr. Kahl's treatment notes. *Id.* (citing AR 603). Indeed, Dr. Kahl's physical examination on the date she wrote the opinion yielded normal results except for pain and tightness of the paraspinal muscles lumbar. *Id.* at 20. None of Dr. Kahl's treatment notes indicated Olson had hand or finger problems and there was no documentation of any episodes of decompensation in her treatment notes. *Id.* The treatment notes also did not contain any discussion of Olson's need to take several breaks a day. Overall, Judge Roberts concluded Dr. Kahl's treatment notes did not support her opinion that Olson was incapable of performing a full-time job and that the supportability factor weighed in favor of the ALJ's decision to give her opinion little weight.

Next, Judge Roberts examined the consistency of Dr. Kahl's opinion with the record as a whole. *Id.* He noted that Dr. Kahl wrote her opinion on May 28, 2015. The ALJ observed that two months prior, on March 18, 2015, Olson reported to the Social Security Administration that her pain/fatigue did not affect her ability to concentrate or think. *Id.* (citing AR 217). She also reported she could pay attention "all the time" and that her ability to follow spoken instructions was "good." *Id.* (citing AR 224). Olson further represented she got along with authority figures "very well" and her ability to

handle stress with changes in routine was "good." *Id.* at 21 (citing AR 225). The only side effect she identified from her medications (which at that time included morphine and hydrocodone) was "tiredness." *Id.* (citing AR 216). Olson then stopped taking morphine and since that time reported no side effects from her pain medications. *Id.* (citing AR 249, 259). She indicated in a function report dated July 22, 2015, that she could pay attention, finish what she starts and follow written and spoken instructions "ok." *Id.* (citing AR 257).

Olson argues that Dr. Kahl's opinion was consistent with the "opinion" of Dr. Wisco, who found Olson's body pain complaints consistent with fibromyalgia. *Id.* (citing Doc. No. 12 at 4). Judge Roberts noted the ALJ found that fibromyalgia was one of Olson's severe impairments. *Id.* He stated that aside from Olson's diagnoses, Dr. Wisco's treatment note (not an opinion) did not support the limitations identified in Dr. Kahl's opinion as it did not identify any medication side effects and how they might contribute to Olson's ability to work eight hours a day, whether she could lift certain weights, use her hands, sit or stand for certain lengths of time, or walk certain distances. *Id.*

Olson further argues that Dr. Kahl's opinion was consistent with the treatment she received under Dr. Michael Espiritu for fibromyalgia and back pain. *Id.* at 22. Judge Roberts noted the ALJ acknowledged she had fibromyalgia and back pain. He then considered the treatment notes from Olson's seven visits with Dr. Espiritu. *Id.* During the first three visits in August 2011, he was trying to diagnose the source of Olson's back pain. *Id.* The next time Olson saw Dr. Espiritu was in July 2012 for treatment of her carpal tunnel syndrome, which was diagnosed by Dr. Wisco. *Id.* Dr. Espiritu acknowledged Olson had fibromyalgia and his physical examination was focused on her wrists, hands and knee. *Id.* (citing AR 319). All further records from Dr. Espiritu relate to Olson's carpal tunnel and carpal tunnel release surgeries performed by Dr. Espiritu. *Id.* (citing AR 325, 327-31). Judge Roberts noted there were no treatment notes from

Dr. Espiritu providing fibromyalgia management or treatment. *Id.* at 23.[3] Judge Roberts concluded that aside from Dr. Espiritu's acknowledgment of Olson's carpal tunnel syndrome, fibromyalgia and the carpal tunnel surgery he performed, his treatment notes do not support the limitations identified in Dr. Kahl's opinion. *Id.*

Next, Judge Roberts addressed Olson's argument that the ALJ rejected Dr. Todd C. Johnson's findings in favor of the state agency physicians. *Id.* He noted that the record contains six treatment notes from Dr. Johnson. Two were for injections and contained no information regarding his impressions of Olson's impairments. The others documented medication checks. *Id.* At these appointments, Dr. Johnson noted Olson's complaints of pain, although she indicated that her medications were generally helping control her pain. *Id.* at 23-24. After observing the treatment notes, Judge Roberts concluded they were not at odds with the ALJ's conclusions. They indicated Olson had mostly normal examination results and experienced symptom relief with her medications. He never mentioned confusion as a side effect as Dr. Kahl had. *Id.* at 24. Judge Roberts concluded Dr. Johnson's treatment notes were not consistent with Dr. Kahl's opinion.

Olson also argues the ALJ rejected Dr. Kovar's diagnosis without giving good reasons. Judge Roberts disagreed, noting the ALJ stated the following with respect to Dr. Kovar:

> The claimant was seen by Allison Kovar, M.D. January 9, 2015 complaining of worry, fatigue, irritability, and panic attacks. On exam, she was cooperative, alert, and in no acute distress. Her gait was normal, and she was able to articulate well with normal speech and coherence. She was assessed with anxiety, generalized osteoarthritis, obesity, depressive disorder, and fibromyalgia. She was started on Vibryd.

---

[3] Judge Roberts noted the ALJ mistakenly stated that Olson continued seeing Dr. Espiritu on April 1, 2013, for management of fibromyalgia and back pain. Judge Roberts observed that the cited treatment notes were from Physician Assistant Nicholas E. Fernando, to whom Dr. Espiritu had referred Olson. Fernando provided pain medication management. Doc. No. 16 at 23, n. 10.

*Id.* at 24-25 (citing AR 19). Judge Roberts found this did not represent a "rejection" of Dr. Kovar's diagnosis, but was a fair recitation of what occurred during Olson's one visit with Dr. Kovar. *Id.* at 25. Indeed, the ALJ agreed in part with Dr. Kovar's assessment by finding Olson's obesity and fibromyalgia were severe impairments and considered their effects in crafting the RFC. *Id.* Moreover, Judge Roberts reasoned that the ALJ is required only to weigh physicians' "opinions," not treatment notes or medical records. *Id.* (citing 20 C.F.R. §§ 404.1520c, 404.1527).

Finally, Judge Roberts considered the ALJ's assessment of the state agency physician opinions. He noted they were consistent with Dr. Kahl's opinion that Olson has fibromyalgia and back pain. *Id.* However, they noted she did not take advantage of physical therapy that was offered to her as a treatment option, which undermined her credibility. *Id.* While Olson claimed she wanted to do those types of exercises at home, she admitted that she does not stretch or exercise despite being encouraged to do so. *Id.* (citing AR 45, 320, 536, 564, 566, 569, 638). The state agency physicians agreed with Dr. Kahl that Olson was limited to lifting 10 pounds, however, they found she could do so "frequently" rather than "occasionally." *Id.* (citing AR 60). Olson testified Dr. Espiritu had imposed a lifting limit of "10 to 15 pounds" after her carpal tunnel surgery and Olson told the Social Security Administration that she could lift 10 pounds without any qualification. *Id.* at 25-26 (citing AR 42, 210).

Dr. Kahl also did not provide any support for her conclusion that lifting should be limited to occasionally and Olson's hearing testimony did not support this conclusion. *Id.* at 26. With regard to repetitive hand/finger actions, Dr. Kahl opined that Olson could grasp occasionally[4] and said she had "good use of the hands for repetitive hand-finger actions" and can "manipulate, handle, and work with small objects with both hands." *Id.* (citing AR 592-93). The state agency physicians found Olson could frequently handle

---

[4] Dr. Kahl's form opinion contains no definitions for the terms "occasionally" or "frequently." *Id.*

and finger meaning "cumulatively more than 1/3 up to 2/3 of an 8 hour day." *Id.* (citing AR 60-61). They cited objective medical evidence and Olson's own statements regarding daily activities and abilities in support.

Aside from the medical opinion evidence and treatment notes in the record, Judge Roberts noted that Dr. Kahl's opinion was not supported by Olson's own statements regarding the effectiveness of treatment or the objective medical evidence. *Id.* at 26-27. Olson reported numerous times throughout the record that her medications were helpful in reducing her pain. *Id.* at 26 (citing AR 487, 493, 496, 499, 505, 508, 517, 520, 522, 525, 528, 544, 558). When Olson reported her medications were not providing effective relief, the record indicates she worked with Fernando to change her medications, got referrals for injections or found other ways to manage her pain. *Id.* at 27 (citing AR 483-582). She consistently rated her pain between 3 to 6 on a 1 to 10 scale during her visits with Fernando. Her most recent treatment notes dated August 2014 to March 2015 indicate she rated her pain as 4 out of 10, indicating she was experiencing steady pain control. *Id.* (citing AR 551, 556, 559, 562, 565, 568, 571). Olson never complained to Fernando that her medications made her confused. *Id.*

With regard to the objective medical evidence, Judge Roberts summarized the various tests and imaging that Olson had undergone and noted they indicated degenerative changes but were often described as minimal or mild. *Id.* at 27-28 (citing AR 365, 372, 377, 379). Olson consistently had mild muscle spasms in her lumbar spine, pain in her lumbar spine with motion, full range of motion in her cervical spine, negative straight leg raise testing, normal gait and stance and no lower extremity weakness in her monthly examinations with Fernando. *Id.* at 28 (citing AR 491, 494, 497, 500, 503, 511, 518, 521, 523, 526, 538, 545, 548, 551, 556, 559, 562, 565, 568, 571). Fernando did note tenderness on palpation and elicited pain with motion during some visits when Olson complained of hand and/or knee pain. *Id.* (citing AR 506, 511, 518, 520-21, 526, 529, 532, 535, 538, 548, 551). Knee pain sometimes caused Olson to limp. *Id.* (citing AR 529, 532, 535). However, Judge Roberts noted these issues appeared to resolve as

Fernando did not document hand pain after March 24, 2014, or knee pain after August 19, 2014. *Id.* (citing AR 538, 551). Olson also did not mention hand or knee pain during the hearing. *Id.* She indicated her fibromyalgia pain is primarily in her back with flare-ups that cause her to hurt all over. *Id.* (citing AR 48). She also acknowledged that her weight and smoking contribute to her chronic pain and she had discussed weight loss, exercise and smoking cessation with Fernando. *Id.* at 28-29.

Dr. Kahl's treatment notes after her medical opinion also showed consistently normal musculoskeletal examinations with only "pain and tightness of paraspinal muscles lumbar." *Id.* at 29 (citing AR 601, 604, 622, 628, 631, 634, 639, 642, 645, 648). Lower extremity examinations by Dr. Kahl were also normal except on July 22, 2016, when Dr. Kahl noted "grinding of the patella with flexion and extension bilaterally." *Id.* While Dr. Kahl indicated she relied on a 15-pound lifting limit imposed by Olson's "orthopedist," Judge Roberts noted he could find no such lifting limitation in the treatment notes of Dr. Espiritu, Olson's orthopedic surgeon. Because Dr. Kahl never conducted her own strength tests and there was no documentation in the record to support this lifting limitation, Judge Roberts concluded this part of her opinion was not consistent with the record.

Olson's own statements regarding her daily activities also offered little support for Dr. Kahl's opinion. Olson reported she visits friends' camp sites, plays with her grandson and goes tanning for recreation. *Id.* (citing AR 586, 220). On a daily basis, she can dress, shop (with help carrying groceries), take care of her personal hygiene and prepare meals. *Id.* She also gets her son ready for school, drives him to school and does light house cleaning and laundry. *Id.* (citing AR 220-21). She visits family or friends four to five times a week, fishes and does "light" swimming in the summer. *Id.* at 29-30. She reported no limitations with the use of her hands.

In sum, Judge Roberts concluded that many of the limitations in Dr. Kahl's opinion were inconsistent with the record as a whole. Her opinion that Olson would have difficulty following instructions and concentrating in a work setting is based on her

finding that Olson's anxiety and the side effects from her medication make her confused, however she is the only physician in the record to document such confusion, which appears to come from Olson's self-reports. *Id.* at 30. Olson did not report confusion to the Social Security Administration and instead indicated she could pay attention and finish tasks. *Id.* (citing AR 224, 257). Judge Roberts also noted that Olson primarily disagreed with the ALJ's weighing of Dr. Kahl's opinion based on her fibromyalgia and back pain. *Id.* As described above, Judge Roberts noted that Dr. Kahl's opinion regarding any limitations these impairments might cause are not consistent with the medical evidence and other evidence in the record. Thus, he concluded the consistency factor supported the ALJ's decision to give Dr. Kahl's opinion little weight.

Judge Roberts lastly considered the specialization factor. He noted Dr. Kahl is board-certified in family medicine but is not a specialist in the relevant areas of orthopedics, pain management, nutrition, neurology, psychology or psychiatry. *Id.* at 30-31. While she prescribes anxiety medication, pain medication and some weight-loss medication, she does not specialize in any of the areas of Olson's severe impairments. As such, he concluded this factor also supported the ALJ's decision to give Dr. Kahl's opinion little weight. Overall, Judge Roberts concluded that the ALJ conducted a proper analysis of Dr. Kahl's opinion and substantial evidence in the record as a whole supported the weight assigned to her opinion. *Id.* at 31.

Olson's second argument concerned the ALJ's assessment of her subjective complaints and whether she was given "the opportunity to present her best disability case." *Id.* She contends her testimony was consistent with notes from her doctors and that the ALJ improperly rejected her testimony in part based on an "isolated statement in the medical records." *Id.* at 31-32. She also argues the ALJ rejected the third-party statement from her husband without making a specific credibility finding.

Judge Roberts noted the ALJ found Olson's statements were "simply not consistent with the preponderance of the opinions and observations by medical doctors in this case." *Id.* at 32 (citing AR 22). The ALJ found Olson's daily activities, the good symptom

relief provided by her medications and the routinely normal examination findings undermined her allegations. *Id.* (citing AR 22-23). After discussing the standards by which an ALJ is required to evaluate a claimant's credibility, Judge Roberts considered the reasons provided by the ALJ for discrediting Olson's subjective complaints and whether they were supported by substantial evidence. *Id.* at 23-24. He noted that neither party made arguments with regard to the ALJ's consideration of the following *Polaski* factors: (1) the duration, frequency and intensity of the pain; (2) precipitating and aggravating factors; (3) dosage, effectiveness and side effects of medication; and (4) functional restrictions. Doc. No. 16 at 35, n. 14. However, he found the ALJ properly acknowledged and examined evidence related to those factors before discounting Olson's subjective complaints. *Id.* Judge Roberts then addressed Olson's challenges to the ALJ's credibility finding based on the objective medical evidence and Olson's daily activities.

Judge Roberts found the ALJ properly acknowledged and examined the objective medical evidence in evaluating Olson's subjective complaints. The ALJ concluded the objective imaging did not support her allegations of disabling symptoms and limitations and discussed specific documents in making this finding. *Id.* at 35 (citing AR 17-22). The ALJ also noted Olson's medical examinations showed mostly normal limits and Olson did not participate in physical therapy when it was offered and did not stretch or exercise as recommended. *Id.* (citing AR 17-23).

Judge Roberts considered the ALJ's analysis of the treatment notes, noting that Olson did not state what parts of the several physicians' notes and Dr. Kahl's opinion allegedly support her subjective complaints. *Id.* Judge Roberts found the ALJ did not reject the treatment notes of Dr. Wisco or Dr. Espiritu. He observed that the ALJ credited their diagnoses by finding Olson's carpal tunnel syndrome and fibromyalgia were severe impairments. *Id.* at 36. However, Judge Roberts stated, "the mere acknowledgment of the presence of fibromyalgia and carpal tunnel syndrome does not support Claimant's arguments related to her subjective complaints." *Id.* Judge Roberts found the ALJ properly considered Dr. Johnson's treatment notes as well. *Id.* at 37.

Olson saw Dr. Johnson primarily for medication checks and injections. *Id.* at 36-37. His treatment notes indicated Olson was experiencing good results with her medications and the ALJ noted the same with regard to these notes. As to Dr. Kovar, Judge Roberts observed there was one treatment note, which the ALJ accurately summarized.[5] The ALJ agreed with Dr. Kovar's assessment that Olson had fibromyalgia and was obese. Absent any argument from Olson regarding what part of Dr. Kovar's note the ALJ failed to consider, Judge Roberts concluded the ALJ properly considered this note. Finally, as to Dr. Kahl's opinion, Judge Roberts found that the ALJ properly considered it as it related to Olson's subjective complaints. *Id.* The ALJ concluded the opinion was not supported by objective medical findings and was inconsistent with substantial evidence in the record. *Id.* Judge Roberts concluded the ALJ appropriately considered the objective medical evidence in the record relating to Olson's subjective complaints.

With regard to her daily activities, Judge Roberts observed the ALJ found Olson had the ability to interact socially as she socialized with family four to five times a week, went to the tanning salon, went shopping once a week and would drive and go out alone. *Id.* at 38 (citing AR 13). Olson would also get her son ready for school, do light cleaning, walk, watch television and maintain personal care. *Id.* She would prepare meals for her family, do laundry, clean the house and go swimming, fishing and hunting. *Id.* Judge Roberts noted the ALJ supported all of these findings with citations to the record and concluded these activities were not consistent with a finding of disability. He concluded the ALJ properly analyzed Olson's daily activities.

---

[5] The record actually contains eight treatment notes from Dr. Kovar addressing various complaints dated October 7, 2011 (vomiting); March 29, 2012 (physical); July 6, 2012 (depression); May 12, 2014 (hyperthyroidism); June 11, 2014 (recheck of anxiety); July 23, 2014 (recheck of anxiety); December 4, 2014 (recheck of anxiety); January 9, 2015 (recheck of anxiety). *See* AR 391-92, 395-97, 399-400, 401-02, 404-05, 431-32, 439-40, 449-50. Given that many of these treatment notes address issues outside of Olson's alleged impairments and the treatment notes related to Olson's anxiety are consistent, I find the ALJ's failure to discuss all the treatment notes from Dr. Kovar to be harmless.

Judge Roberts then considered the ALJ's analysis of the third-party function reports provided by Olson's husband. *Id.* Judge Roberts noted these reports were similar to Olson's. *Id.* The ALJ did not give them significant weight, finding they did not establish that Olson was disabled. *Id.* (citing AR 21). Also, because Olson's husband was not medically trained, his observations regarding Olson's medical issues were "questionable" and the ALJ noted that his natural affection for his wife may have "colored" his opinion and resulted in a "natural tendency to agree with the symptoms and limitations the claimant alleges." *Id.* at 39 (citing AR 22). The ALJ also found the statements were not consistent with the medical providers' opinions and observations. *Id.*

Olson's only objection to the ALJ's consideration of her husband's reports was that the ALJ rejected them "without making specific credibility findings, other than stating he was not a medically trained person and statements were questionable because the mere [sic] fact that he was her husband." *Id.* (citing Doc. No. 12 at 7). Because Olson did not state what part of the reports the ALJ should have adopted or cite any law or facts in support of this argument, Judge Roberts found this argument without merit. *Id.* In any event, he concluded the ALJ properly evaluated the credibility of Olson's husband's reports by discounting them based on his lack of medical expertise and the inconsistencies with the medical evidence in the case. *Id.* Moreover, given the similarities between the reports of Olson and her husband, Judge Roberts noted that the ALJ could have relied on the same reasons that she discredited Olson's subjective complaints. *Id.* at 40 (citing *Young v. Apfel*, 221 F.3d 1065, 1068-69 (8th Cir. 2000)). However, the ALJ had cited reasons specific to the husband's reports. Judge Roberts found the ALJ properly concluded these reports could not be given significant weight. *Id.*

Judge Roberts next addressed Olson's argument that the ALJ misstated the facts in her conclusion and did not give Olson the opportunity to present her best disability case. This argument is based on the ALJ's comment that on November 20, 2013,

"Claimant was seen [by PA Fernando] reporting her hope to go deer hunting with her husband soon and indicating that her medications were helpful controlling her symptoms." *Id.* (quoting AR 18). Olson argued the ALJ never asked her about this at the hearing and explains that she was actually going on an out of town trip with her husband (who was deer hunting) rather than go hunting with him. *Id.* (citing Doc. No. 12 at 6). She argued the ALJ relied on a misstatement of the facts to erode the treatment of her doctor for her fibromyalgia and back pain. *Id.* After observing the treatment note himself, Judge Roberts concluded the ALJ did not make a misstatement. The treatment note states: "She also tells me she is hoping to go hunting with her husband for deer. I advised her this may aggravate her back symptoms and if she does this she needs to be very careful. My recommendation is strict observation but she will have to deal with the consequences if she aggravates her back. She verbalized understanding." *Id.* at 41 (citing AR 525). Judge Roberts found there was no evidence in the record that Olson intended to do anything other than hunt and Fernando's concerns seemed related to hunting as opposed to going on a trip. *Id.* Judge Roberts reasoned the ALJ was not required to ask Olson about this one treatment note in an over 600-page record and that it was Olson's attorney's responsibility to clarify this issue at the hearing, not the ALJ's. *Id.*

Judge Roberts observed that Olson's attorney was allowed to make an opening statement at the disability hearing and the ALJ asked relevant questions during the statement. *Id.* at 42. After the ALJ questioned Olson, she gave Olson's attorney the opportunity to ask questions as well. Olson's attorney was also given the opportunity to question the vocational expert (VE) but declined. Finally, the ALJ asked Olson's attorney at the end of the hearing whether the case was ready for decision and Olson's attorney said it was. Her attorney chose not to give a closing statement or mention the hunting issue during the hearing. *Id.* (citing AR 35-36, 46-48, 51). Judge Roberts concluded the ALJ conducted a fair hearing and did not err in taking the treatment note about Olson's intent to go hunting at face value.

Overall, Judge Roberts concluded the ALJ properly evaluated Olson's subjective complaints and gave good reasons for discrediting them as well as the allegations in Olson's husband's reports. He found the credibility determination was supported by substantial evidence in the record as a whole.

Finally, Judge Roberts addressed Olson's argument that the ALJ relied on a defective hypothetical question to the VE. The ALJ presented only one hypothetical to the VE as follows:

> [The] person could be able to be on their feet standing or walking two hours in an eight-hour day. Can sit for six hours in an eight-hour day. Can occasionally do all postural activities, climb, balance, stoop, kneel, crouch, crawl. Should not work on ladders or crawling on hands and knees, . . . . Can use hands for frequent, not constant, handling, fingering and feeling. And then avoid concentrated exposure to cold, vibrating equipment, and fumes, but note that she is a cigarette smoker.

*Id.* at 43-44 (citing AR 50). The VE responded that jobs as addresser, document preparer, and polisher of eye frames would be available. *Id.* Olson's attorney did not ask any follow-up questions. *Id.* The ALJ concluded Olson was not capable of performing any of her past relevant work. *Id.* (citing AR 23). However, the ALJ found Olson could perform other work that exists in significant numbers in the national economy based on the VE's testimony. *Id.* (citing AR 24).

Olson argues the hypothetical question was defective because it did not include limitations identified by Dr. Kahl that Olson would "miss a lot of work" or that the number of sedentary jobs identified by the VE was reduced to 60 to 65 percent of those available if the use of hands was reduced from constant handling, fingering and feeling to frequent handling, fingering and feeling. *Id.* (citing Doc. No. 12 at 8). Judge Roberts found that the ALJ provided good reasons for giving less than controlling weight to Dr. Kahl's opinion and therefore, was not required to include all of the limitations she identified in the hypothetical to the VE. *Id.* He also reasoned that the ALJ had properly discounted Olson's subjective complaints. *Id.* at 45-46. Judge Roberts concluded the

ALJ appropriately included the limitations she found were credible and supported by substantial evidence in the hypothetical and therefore, the VE's testimony constitutes substantial evidence in support of the ALJ's decision. *Id.* at 46.

With regard to Olson's argument that the jobs identified by the VE would be reduced based on hand use limitations, Judge Roberts noted the ALJ did not ask the VE about hand use limitations, but included a limitation of frequent fingering and feeling in the hypothetical. *Id.* Judge Roberts agreed with the Commissioner that the VE testified that the *sedentary occupational base* was reduced to 60 to 65 percent of available jobs based on hand limitations, not the specific jobs identified by the ALJ. *Id.* Even if the specific jobs the VE listed had been reduced to 60 to 65 percent, that still would have left 37,000 to 40,950 available jobs, which is considered significant under Eighth Circuit precedent. Judge Roberts concluded the ALJ did not rely on a defective hypothetical question to the VE.

Based on the above analysis, Judge Roberts recommends that I affirm the ALJ's decision and dismiss the case with prejudice.

## IV. DISCUSSION

Olson raises the following objections to the R&R:

- The Report and Recommendation errs in rejecting the opinions of Dr. Kahl, Dr. Wisco, and Dr. Espiritu and not giving them controlling weight.

- Given the conclusions reached by Dr. Kahl, Dr. Wisco and Dr. Espiritu, if they are not rejected and given weight, then the testimony of the Claimant is then supported by the opinion of Dr. Kahl, Dr. Wisco and Dr. Espiritu and therefore credible.

- If arguments I and II as set forth above are found to be correct, then Argument III follows suit in that the ALJ relied upon a defective hypothetical to the Vocational Expert

- The case should remand the matter in difference [sic] to the treating physician's opinion if the Court chooses not to reverse this matter

*See* Doc. No. 17 at 4. Olson raises the same arguments as her initial brief, except this time she challenges both the ALJ's decision and Judge Roberts' reasons for recommending that I affirm that decision. *See id.* at 5 (also addressing the credibility finding as to Olson's husband's reports). I will address each objection in turn.

### A.    *Medical Opinion Evidence*

Aside from repeating the arguments in her initial brief, Olson argues, "the ALJ and the magistrate found that the treating doctor Kahl's report shouldn't be given the weight. This means the doctor[']s report cannot be believed, and the bottom line is the doctor was fooled by the claimant." Doc. No. 17 at 8. Olson goes on to argue:

> Dr. Kahl not being believed, the magistrate believed in the state doctors that never examined the claimant, never spoke to the claimant, and only reviewed the medical reports of the treating physicians.
>
> The claimant's doctor, meanwhile, had examined the claimant, spoke to her, treated her, and reviewed the office records of her prior examinations at the clinic, is not to be believed per the report and recommendation.

*Id.* This is the full extent of Olson's argument on this issue. She does not cite any case law or citations to the record in support. Nonetheless, there are several other reasons why this objection is unpersuasive.

First, Olson misconstrues the standard. Judge Roberts did not conduct a credibility assessment or weigh the medical opinions in the record, so it is incorrect to state that he "believed in the state doctors." *See* Doc. No. 17 at 8. Judge Roberts examined the medical opinions in the record, the ALJ's reasons for the weight she assigned to those medical opinions and considered whether those reasons and weights were supported by substantial evidence in the record as a whole based on the factors for evaluating a medical opinion assigned less than controlling weight under 20 C.F.R. § 404.1527(c)(2). *See* Doc. No. 16 at 11-31.

Second, while Olson makes no argument as to the "opinions" of other treating doctors in the narrative of her objections, she does object to the ALJ rejecting the "opinions" of Dr. Wisco and Dr. Espiritu. To be clear, the only medical opinions in the record are from Dr. Kahl and the state agency consultants. AR 54-83, 589-96. The alleged "opinions" Olson cites from Dr. Wisco and Dr. Espiritu are treatment notes. *See* AR 308-34 (treatment notes for Drs. Wisco and Espiritu). To the extent she disagrees with the ALJ's assessment of these treatment notes, I agree with Judge Roberts that they contain little to no information regarding Olson's ability to function in the workplace and the ALJ fully considered them and credited them to the extent they identified Olson's impairments and the symptoms from those impairments. However, as noted by Judge Roberts, they failed to establish disabling limitations and were inconsistent with Dr. Kahl's opinions.

As to Dr. Kahl's opinions, the ALJ summarized her opinions and provided several good reasons for giving them "little weight." These include:

- Being the product of "pre-printed questionnaires, submitted to Dr. Kahl by the claimant's attorney that includes a number of leading questions and similar inducements which are not designed for objective responses, but rather for verification of legal conclusions about the claimant's alleged impairments."

- The opinion "appears to be intended to further the claimant's litigation interests rather than provide an objective medical evaluation of her functional limitations because the opinions related to functional limitations are not supported with objective medical findings and are inconsistent with the substantial evidence of record."

- Dr. Kahl "first treated the claimant <u>less than two months</u> prior to completing this form, evidencing a lack of longitudinal treating history."

*See* AR 22 (emphasis in original). As Judge Roberts explained, each of these reasons has been recognized by the Eighth Circuit as a "good reason" for giving a treating physician's opinion less than controlling weight. *See Anderson v. Astrue*, 696 F.3d 790, 794 (8th Cir. 2012) ("a conclusory checkbox form has little evidentiary value when it

cites no medical evidence, and provides little to no elaboration") (internal quotations omitted); *Teague v. Astrue*, 638 F.3d 611, 616 (8th Cir. 2011) (ALJ properly discounted medical opinion when physician's notes "reported no findings of significant limitation or inability to work"); *Kirby v. Astrue*, 500 F.3d 705, 709 (8th Cir. 2007) (providing that an ALJ is entitled to give less weight to a medical source opinion where the opinion is based on a claimant's subjective complaints rather than on objective medical evidence); *Randolph v. Barnhart*, 386 F.3d 835, 840 (8th Cir. 2004) (reasoning that treatment notes did not indicate physician had sufficient knowledge upon which to formulate an opinion about claimant's ability to function in the workplace when she had seen claimant on only three occasions before issuing opinion). These reasons are also supported by substantial evidence in the record.

Prior to issuing her opinion, the record shows Dr. Kahl saw Olson on two occasions. The record does not contain her treatment note from the March 24, 2015, visit, but the May 19, 2015, treatment note references the March 24, 2015 visit. AR 603. While some of Dr. Kahl's May 19, 2015, note references past treatment notes from Olson's visits with other providers at the Family Medicine Clinic, Dr. Kahl's opinion does not reference any of those past treatment notes or otherwise indicate that she considered them in evaluating Olson's limitations. AR 589-96. Instead, it appears that Dr. Kahl's opinion is based on one physical examination (with largely normal results) and Olson's own statements. Dr. Kahl's treatment notes from March 24, 2015, and May 19, 2015, do not indicate that she conducted any type of functional testing or discussed with Olson what she thought was the most she could do in a given eight-hour workday. With regard to concentration, Dr. Kahl's notes state "symptoms do not include difficulty concentrating, excessive worry, fatigue, muscle tension, nervousness, panic attacks, shaky hands or sweaty palms." AR 603. Other treatment notes suggest that Olson's degenerative disc disease was stable, her medications effective and her musculoskeletal functions normal except as it related to motion in her lumbar spine, which the ALJ accounted for in the RFC.

With regard to the state agency opinions, the ALJ summarized each of their opinions and noted she weighed them as "statements from non-examining expert sources." AR 21. She concluded the state agency medical consultants "adequately considered the medical evidence of record" and gave their opinions "great weight" finding them consistent with the medical evidence of record. *Id.* With regard to the state agency psychological consultants, the ALJ likewise summarized their opinions and gave them "great weight." *Id.* She reasoned:

> The limitations noted by the examiners are well supported with specific references to medical evidence. The opinions are internally consistent as well as consistent with the evidence as a whole. As there is no objective evidence contradicting these findings, the opinions are entitled to substantial weight. The undersigned finds however, that the claimant only has mild limits in her ability to maintain concentration, persistence, and pace.

*Id.*

The ALJ's reasons for giving the state agency opinions "great weight" and "substantial weight" are supported by substantial evidence in the record as a whole. As discussed by Judge Roberts, the treatment notes for Olson's physical symptoms include notes from Drs. Espiritu and Wisco related to Olson's fibromyalgia and carpal tunnel diagnoses. Doc. No. 16 at 22. Olson's fibromyalgia was initially treated with medication prescribed by Fernando, a Physician's Assistant. *Id.* at 23, n. 10. Dr. Espiritu treated Olson's carpal tunnel with surgery. *Id.* at 23. None of these treatment notes support the limitations identified in Dr. Kahl's opinion. *See* AR 308-31; 483-579. The medical record also consists of treatment notes from Dr. Todd Johnson (who is in the same office as Fernando) related primarily to injections and medication checks. Doc. No. 16 at 23-24; AR 508-79. These notes also do not support the limitations identified in Dr. Kahl's opinions, except to the extent of documenting Olson's complaints of pain. As Judge Roberts noted, they do not document any concerns of confusion and generally show normal physical examinations with symptom relief through medication. Doc. No. 16 at 24.

As for treatment notes related to Olson's mental limitations, these consist of Dr. Kovar's treatment notes, which relate primarily to Olson's anxiety. She did not note any confusion or other symptoms that support Dr. Kahl's opinion. The state agency consultants considered these same medical records in reaching their conclusions of only mild limitations in concentration, persistence and pace. *See* AR 68-81. While Olson did report "impaired concentration" to Dr. Keizer, the consultative examiner, and Dr. Keizer confirmed that her concentration appeared "slightly impaired," she noted that Olson's impairments in her ability to maintain attention, concentration and mental pace would be related to her pain, use of medications and amount of restorative sleep. AR 587. As Judge Roberts noted, it does not appear that Dr. Kahl was aware of or relied on Dr. Keizer's opinion in forming her opinion. *See* Doc. No. 16 at 19, n.9.

Olson takes issue with the ALJ giving less weight to Dr. Kahl's opinion based on the fact that she had treated her less than two months, but giving greater weight to the state agency consultants who have never treated or examined Olson. *See* Doc. No. 17 at 5. This argument presumes that these opinions start on the same playing field. They do not. "A treating physician's opinion is given controlling weight 'if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence.'" *House v. Astrue*, 500 F.3d 741, 744 (8th Cir. 2007) (quoting *Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005)). State agency opinions weigh much less from the start because they are recognized as non-examining opinions in the regulations. *See Wilcockson v. Astrue*, 540 F.3d 878, 880 (8th Cir. 2008) ("the opinions of nonexamining sources are generally, but not always, given less weight than those of examining sources.") (citing 20 C.F.R. § 404.1527(d)(3)). Therefore, a short treatment history is a good reason for giving a treating physician's opinion less weight but has no bearing on the state agency opinion because it is already presumed to have less weight based on that factor. I find no error with this aspect of the ALJ's evaluation of these opinions, especially because the short treatment history was

one of several reasons the ALJ provided for giving Dr. Kahl's opinion less than controlling weight.

After a de novo review of the record, I find the ALJ's assessment of the medical opinion evidence to be supported by substantial evidence in the record as a whole. The ALJ provided good reasons for weighing the medical opinions as she did, particularly with regard to Dr. Kahl's opinion, and the § 404.1527(c)(2) factors support the ALJ's evaluation as discussed by Judge Roberts. Olson's objections related to the ALJ assessment of the medical opinion evidence are overruled.

## B.     *Olson's Subjective Complaints*

Olson's objections related to her subjective complaints depend, in part, on full credit being given to the opinions of Dr. Kahl and the findings by Drs. Wisco and Espiritu, such that they would be consistent with and support Olson's allegations of disability. For the reasons explained above, I find the ALJ provided good reasons supported by substantial evidence for giving Dr. Kahl's opinions less than controlling weight. The ALJ also was not required to weigh the findings of Drs. Wisco and Espiritu, but nonetheless, agreed with their diagnoses. As explained above, Olson does not identify any aspects of their opinions that were not acknowledged by the ALJ and support more restrictive limitations than those adopted in the RFC. Olson takes issue with the ALJ's reference to hunting as an activity and the ALJ's assessment of her husband's reports. Olson makes no other arguments in her objections as to why her subjective complaints should have been given greater weight.

Having conducted a de novo review, I find the ALJ's credibility determination is supported by substantial evidence in the record as a whole. The ALJ reasoned that Olson's statements concerning the intensity, persistence and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence in the record. AR 22. Specifically, the ALJ reasoned:

The claimant has described daily activities, which are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations. She continues to attend the tanning salon, fish, hunt, play with her grandson, and care for her home and family. Furthermore, the medical evidence of record does not entirely support the claimant's allegations regarding her physical and mental impairments. The claimant's subjective reported history cannot substitute for the objective medical evidence contained in the record, which provides a more accurate longitudinal history of the claimant's conditions. The claimant routinely advised her providers that her medications provided good symptom control, and her examination findings were routinely within normal limits. While treatment notes indicate that the claimant has received treatment for her alleged health issues, the medical findings fail to support the claimant's allegation that she is unable to work. As such, the overall evidence indicates that while the claimant's condition restricts her ability to perform work-related activity, her condition does not preclude all work activity.

In sum, the above residual functional capacity assessment is supported by the claimant's activities of daily living and the objective medical evidence contained in the record. Treatment notes in the record do not sustain the claimant's allegations of disabling conditions. More specifically, the medical findings do not support the existence of limitations greater than the above listed residual functional capacity. The undersigned acknowledges that the claimant does experience some limitations, which the residual functional capacity above accounts for and describes.

AR 23. The ALJ also discredited Olson's husband's allegations, stating he "is not medically trained to make exacting observations as to the date, frequencies, types, and degrees of medical signs and symptoms, or the frequency or intensity of unusual moods or mannerisms, the accuracy of [his] statements are questionable." AR 21. She also discredited them based on Mr. Olson's natural tendency, as her husband, to agree with his wife's allegations, and because similar to Olson's own statements, they were not consistent with the preponderance of the opinions and observations by medical doctors. *Id.* at 22. Because Olson's and her husband's allegations are so similar, I will address them together.

Olson's function reports and pain questionnaires allege she cannot work due to experiencing pain "all day every day." AR 215, 219. Her husband made similar allegations. AR 205-12; 230-37. The objective medical evidence shows degenerative changes in Olson's spine that support her complaints of pain, however those changes are described as "mild" or "minimal" and are considered stable. AR 377-81. She has also been diagnosed with fibromyalgia. AR 317, 319. She has taken narcotics for at least 12 years to control her pain. AR 308, 316. Within that time, she has developed a tolerance such that the medications appear to be less effective over time. AR 508, 513, 542, 553. Notably, her providers have stated that narcotics are not optimal for fibromyalgia. AR 509. She has reported on numerous occasions that her medications are effective in controlling her symptoms. *See* AR 410 (stating she felt the Nucynta helped her symptoms); AR 487; AR 496; AR 499 ("reports continued low back pain but pain medication does help in managing chronic pain."); AR 505 ("from a med management standpoint her pain medications do help"); AR 508 (noting that Olson felt Nucynta controlled her pain, but was expensive); AR 513 ("stabilized on Nucynta and hydrocodone"); AR 522 (despite it being a rough day perhaps due to weather noted that "overall med management has been helpful").

Olson's physical examinations were generally normal with full motor strength, normal gait and no lower extremity weakness. AR 503, 506, 511, 518, 523, 545. However, she did report pain with range of motion of the lumbar spine. *Id. But see* AR 308 (noting "[s]he had exaggerated response to pressure on her back, right-sided paraspinal muscles, and around the SI joint" and refused to do FABER test because too much movement of her leg causes pain). She gets her son ready and takes him to school, does light housework, walks, goes to the tanning bed, shops for groceries, does laundry, light swimming, fishing and visits friends and family four to five times a week. AR 217, 223. While the ALJ mentioned hunting in discussing Dr. Espiritu's treatment notes, she did not place emphasis on that activity over others, and, as discussed by Judge Roberts, the treatment note related to her hunting trip is fairly interpreted as describing Olson's

intention to go hunting as opposed to merely traveling out of town. *See* Doc. No. 16 at 40-41.

Olson's providers have discussed that her weight and smoking habit were contributing to her pain. AR 499 ("I note that she doesn't do any regular cardiovascular exercises a minimum of 30 minutes three times a week . . . I advised her that she needs to perhaps work on modifying her caloric intake as well as getting involved in 30 minutes of physical activity."); AR 551 ("needs to quit smoking"); AR 556 ("Encouraged patient to work on weight loss"); AR 561 ("She understands that weight plays a big role in exacerbation of her chronic pain and joint pain."). She was also told that regular exercise or physical therapy would help her symptoms, but she has not participated in those recommendations. AR 320 ("I have offered physical therapy, but she just wants to do that on her own at home."); AR 499, 512, 521, 545 ("Encouraged patient to walk daily."); AR 45 (testifying at the hearing that she does not do any exercise whatsoever). Finally, I note that Olson asked Dr. Kovar to "put her on disability," but there is no opinion from Dr. Kovar in the record or any other indication that she believed Olson's symptoms were disabling. *See* AR 423 ("comes in today stating that her depression is causing her to have a hard time and asking me to put her on disability for her depression so she doesn't have to work anymore . . . States cannot face going to work at Stangel's anymore and wants to be on disability b/c she needs the paycheck.").

"As is true in many disability cases, there is no doubt that the claimant is experiencing pain; the real issue is how severe that pain is." *Thomas v. Sullivan*, 928 F.2d 255, 259 (8th Cir. 1991). "Pain is recognized as disabling when it is not remediable and precludes a claimant from engaging in any form of substantial gainful activity." *Cruse v. Bowen*, 867 F.2d 1183, 1186 (8th Cir. 1989) (citing *Benson v. Matthews*, 554 F.2d 860, 863 (8th Cir. 1977)). *See also Brown v. Barnhart*, 390 F.3d 535, 541 (8th Cir. 2004) ("While there is no doubt the claimant experiences pain, the important question is how severe the pain is."). When an ALJ explicitly discredits the claimant's testimony and gives good reason for doing so, the court should normally defer to the

ALJ's credibility determination. *Gregg v. Barnhart*, 354 F.3d 710, 714 (8th Cir. 2003). It is not my role to re-weigh the evidence. *See* 42 U.S.C. § 405(g); *see also Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000) ("[I]f, after reviewing the record, [the Court] find[s] that it is possible to draw two inconsistent positions from the evidence and one of those positions represents the [Commissioner's] findings, [the Court] must affirm the decision of the Commissioner.") (citations and quotations omitted).

As discussed above, the record as a whole demonstrates that Olson has symptoms of pain but it does not support a disabling amount of pain as alleged by Olson and her husband. Olson is able to engage in multiple activities despite her complaints of pain. *See Mehaug v. Astrue*, 578 F.3d 805, 817 (8th Cir. 2009) ("[A]cts such as cooking, vacuuming, washing dishes, doing laundry, shopping, driving, and walking, are inconsistent with subjective complaints of disabling pain."). Moreover, the treatment records indicate that medications do a sufficient job of treating her pain. To the extent they are not always effective, that is a result of Olson's tolerance to the medication rather than a worsening of her condition. Indeed, her providers have encouraged her to decrease her use of narcotics and focus on exercise, physical therapy, weight loss and smoking cessation to reduce her pain. *See* AR 551 (discussed long term goal to taper down her opioids and to eventually get off them). Olson admits she does not exercise but relies on her medication. AR 638 ("Just using her meds, no exercises or stretching that she does at this time for her back pain."). Her physical examinations show normal results except with motion in the lumbar spine. This limitation is sufficiently accounted for in the ALJ's RFC. The ALJ provided good reasons that are supported by substantial evidence in the record as a whole in concluding Olson's subjective complaints and her husband's reports regarding Olson's abilities were not fully credible. I find no error with respect to the ALJ's credibility determinations of Olson and her husband.

## C.    *Hypothetical Question to the VE*

Olson argues the ALJ's hypothetical question to the VE does not take into account her complete limitations because Dr. Kahl opined that Olson cannot work. *See* Doc. No. 17 at 10. Olson acknowledges that this objection is dependent on whether her previous objections are accepted regarding the weight that should be given to the opinion of her treating physician and her own subjective complaints. *Id.* at 8-9 ("If the doctors and the Plaintiff are believed then the hypothetical questions are defective."). As explained above, I find that substantial evidence in the record as a whole supports the ALJ's evaluation of the medical opinions and Olson's subjective complaints, which were used by the ALJ to formulate the RFC and the hypothetical to the VE. Because the ALJ relied on the VE's testimony in response to a hypothetical question that mirrored the limitations ultimately adopted by the ALJ in the RFC, I find no error with regard to this aspect of the ALJ's decision.


## V.    CONCLUSION

For the reasons set forth herein:

1.    Olson's objections (Doc. No. 17) to the Report and Recommendation (Doc. No. 16) are **overruled**.

2.    I **accept** Judge Roberts' Report and Recommendation (Doc. No. 16) without modification. *See* 28 U.S.C. § 636(b)(1).

3.    Pursuant to Judge Roberts' recommendation:

   a.    the Commissioner's determination that Olson was not disabled is **affirmed**; and

   b.    Judgment shall enter in favor of the Commissioner.

**IT IS SO ORDERED.**

**DATED** this 19th day of September, 2019.

_____
Leonard T. Strand, Chief Judge